WILLIAM McCLELLAN *vs.* WILLIAM CROOK.—*Dec'r* 1848.

Upon a former appeal in this case, this court passed a decree reversing the decree of the chancellor, and remanding the cause to the court of chancery, with directions to sell the mortgaged premises, according to the usual course in such cases, unless the appellant should pay into that court the sum ascertained, by an audit directed to be made in this court, to be due the appellee. HELD:

That this was a final decree, disposing of the entire subject in controversy upon the pleadings and proofs exhibited, and the only authority remaining to the chancellor over the subject was, to carry that decree into execution. He was necessarily confined to the limits prescribed to him, whatever further or ulterior equity might have arisen in favor of the appellant, after the passing of the original decree by the chancellor.

This decree has become the law of the case, and the chancellor cannot otherwise deal with the matters adjudicated by it, than in the form it prescribes.

Where evidence appears upon the record of a prospective or continuing equity, of the same character as that passed upon, this court will limit itself to an exposition of the principles involved, and remand the cause, to have the account stated in chancery within those principles; but if no such evidence appears, it will pass a definitive and final decree.

APPEAL from the Court of Chancery.

The original bill in this cause, was filed on the 21st of July, 1843, by *William Crook*, the present appellee, against *McClellan*, the appellant, and one *Sophia Ducatel*, administratix of *Alexis A. Delmas*, deceased, for the sale of certain real estate, in the city of *Baltimore*, mortgaged by said *Delmas*, in his life time, to one *Elizabeth Taggart*, who afterwards assigned the mortgage debt to the complainant.

The bill states, that the mortgage was executed on the 19th of November 1836, to secure an indebtedness of $2000, owing by *Delmas*, the mortgagor, to the mortgagee. That *Delmas* afterwards, executed a second mortgage of the same property to *Israel Griffith*, of the city of *Baltimore*, and shortly thereafter died, leaving the whole debt to said *Taggart* unpaid, and about one-third of the debt due said *Griffith*, also unpaid. That afterwards, on the 28th of May 1839, the complainant paid said *Taggart* the whole amount of her mortgage debt, and on the 12th of February 1840, received from her an assignment, duly executed, of said mortgage, and her interest therein. That after this assignment, viz., on the 17th of December 1842, *Griffith*, the junior mortgagee, upon a bill to which the complainant was not made a party, obtained a decree from *Baltimore* county court, as a court of equity, for the sale of the mortgaged premises, for the payment of the balance due on his mortgage claim. That under this decree, the property was sold to *William McClellan*, (the appellant,) for the sum of $1200, subject to the mortgage assigned to the complainant, of the existence of which the trustee distinctly informed *McClellan*, before and at the time of sale. The bill then prays for a sale of the mortgaged premises to satisfy the mortgage debt so assigned to the complainant, with interest, and for general relief.

The *answer* of *McClellan* admits his purchase of the property under the decree of *Baltimore* county court, and also the execution of the mortgage to *Elizabeth Taggart*, but insists that after the death of said *Delmas*, one *Victor Vallette* purchased the equity of redemption in said property, and paid said *Elizabeth* her mortgage claim, and thereby said property became and continues wholly acquitted therefrom. The

answer further insists, that if said *Crook* should be considered lawfully entitled to proceed against said property in the hands of respondent for payment of said mortgage debt, the said claim must be abated by allowance against said *Crook* for the rents of said property reasonably chargable against said *Crook*, for and by reason of his use and occupation of said property for several years past, and ever since the death of said *Delmas*. And the defendant accordingly charges, that said *Crook* has possessed and enjoyed, without paying rent therefor to any one, the said property for the period aforesaid.

The *answer* of *Sophia Ducatel*, simply denies that the said *Delmas*, to her knowledge, left any personal property whatever, or that any amount of money has come to her hands as administratrix of the deceased.

A commission was then issued under which testimony was taken, which it is not necessary to state. The auditor on the 13th of November 1844, reported two accounts, in one of which, (account A,) made under the instruction of the complainant's solicitor, he charged interest on the mortgage claim from the 19th of May 1839, to the date of the report, and credited the rent of the mortgaged property at $400 *per annum*, from the 25th of January 1843, the day when it was sold under the decree of *Baltimore* county court; leaving due the sum of $1938, with interest from the date of the report. In account B, made to meet the views of the defendant, the mortgaged estate was credited with rent from the 28th of May 1839, when the complainant became the assignee of the claim. On the 19th of the same month the auditor, at the instance of the complainant, stated another account (C,) wherein he charged the mortgaged estate with certain taxes and ground rents paid by the complainant, so that by this account there was due the complainant, the sum of $2129.80, with interest from the 13th of November 1844.

Exceptions were taken to these accounts by both parties, and the chancellor, *(Bland,)* on the 16th of December 1844, ratified and confirmed the auditor's report of the 19th of November, and the account C, accompanying the same, and decreed the property to be sold for the payment of the sum ascertained by

that account to be due the complainant. From this decree the defendant, *McClellan,* appealed, and this court, at June term 1846, ordered and directed an audit to be made in this court in conformity with its views by a special auditor appointed for the purpose, who accordingly reported account (B,) in which interest was charged upon the mortgage debt, yearly, and rent credited yearly, from the 14th of May 1839, to the 19th of November 1844, the date of the auditor's report; which was affirmed by the chancellor. The appellate court then, on the 26th of June 1846, passed a decree, reversing, with costs, the decree of the chancellor of the 16th of December 1844, and ratified and confirmed account B, stated by the special auditor under its direction, "and for the purpose of enforcing the payment of the claims therein mentioned, it is hereby further ordered, adjudged and decreed, that the said cause be and the same is hereby remanded to the court of chancery, and that unless the said *William McClellan,* the appellant, shall pay into the said court the sum of $485.49, with interest on the sum of $379.12, from the 19th of November 1844, until so brought into the said court of chancery, on or before the first day of April next, that then the said mortgaged premises be sold for the payment of the said sum and interest, under the orders and decrees of the said court of chancery, according to the usual course of the said court in such cases; and that *Samuel H. Taggart* and *St. George W. Teackle,* be, and are hereby appointed trustees to make said sale, they first giving bond to the satisfaction and approval of the chancellor, for the due execution of the trust reposed in them by this decree, and make report of such sales as usual in such cases, according to the course of the court of chancery."

The cause having been thus sent back under this decree to the court of chancery, the defendant, on the 27th of February 1847, filed his petition in the cause, alleging, that the plaintiff *Crook,* has, ever since the period to which the audit in this court is carried, (19th of November 1844,) occupied said mortgaged property without paying any rent to your petitioner, or in any wise accounting therefor to him, or being entitled to any abatement whatsoever for any ground-rent charges, or otherwise,

and has refused to leave the premises although duly warned to do so, whereby, for a long portion of the time elapsed since the said period of the said audit, said *Crook*, (as properly notified by your petitioner,) has become answerable for double rent, which your petitioner accordingly claims. Your petitioner exhibits an account of rents due from said *Crook*, whereby it appears that no part of the mortgage claim remains due to him; but on the contrary said *Crook* owes your petitioner the sum of $480.67, as of the 14th of February 1847. The petitioner then insists that the property is not liable to be sold, and prays that the sale may be stopped, and the cause again referred to the auditor.

Upon this petition the chancellor, *(Johnson,)* on the 31st of March 1847, after stating that the decree of the Court of Appeals had been filed in the cause, proceeds: "This appears to be a final decree, and simply remands the cause to this court, for the purpose of carrying the said decree into execution, and this, consequently, is the only authority which the chancellor has over the subject. It is therefore ordered that the within petition be dismissed; but, under the circumstances of the case, it is dismissed without costs."

From this decree the petitioner, *McClellan* appealed, to this court.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN and FRICK, J.

By MAYER, for the appellant.

The Court of Appeals in passing its decree on the former appeal in this case, did not limit itself to a declaration of the principles upon which the parties should account, but went on to have an audit made of the accounts. These could, in an appellate tribunal, allow no new testimony to be given to enlarge the basis of the account, but had necessarily to be confined to the *data* and the *dates* furnished by the case as audited, and as supplied with testimony, in the court of chancery. The difficulty encountered when the case returned to chancery, arose altogether from this court ordering an audit before itself,

instead of remanding the case, with directions comprehensive enough to embrace matters of the same character as those already passed on in the court's opinion and decree, but ulterior in account to the latest periods included in the proceedings in chancery;—as then it was not here competent for *McClellan* to show, that *Crook* continued his tenant without actually paying rent, for a long space of time after the date up to which the audit in chancery on the testimony charged him, this court's audit was narrowed to that date, and so far fell short of justice to *McClellan* upon this court's adjudicated principle in the cause, a large subsequent rent indebtedness existing to *McClellan* on *Crook's* part.    The chancellor, not denying the justness of the view taken by us of this court's principle, felt constrained to dismiss the petition, because he regarded this court's decree so peremptorily restrictive, as only to require payment of the balance on this court's audit, and to exclude all further accounting in chancery in the pending cause.    Under that interpetration, if we had paid money to *Crook* after the decree in chancery, and in anticipation of the account passed by this court, and enough, as the result might have showed, to extinguish what this court found due, we should have been shut out from relief, in that cause, at least.    If rents accrued to us since *Crook's* occupation of the mortgaged property, how did such accrued indebtedness differ from the effect of so much money paid in satisfaction of this court's decree on the audit made here?    The only question then would be, whether by petition we could claim relief; and in the cause then returned to chancery.    The cause was in chancery when remanded for action by the court of chancery.    It had possession of the case, even if the direction of the Court of Appeals were specific.    If even the petition were not viewed as part of the original proceedings, but as a substantially new proceeding, founded on the decree and on the principles it adjudged, was it not a regular act on which relief could be claimed, as by subsequent event, and on the principle already conceded, expanded beyond the measure of this court's decree?    The case then would have been analagous to that of supplemental matter, appropriate ordinarily for supplemental bill, which even after decree, may

be filed to extend the relief on the enlarged ground of merits already adjudged, which the decree has awarded; and analogous, too, to the case of a supplemental bill for carrying into execution a decree, which means to enlarge the scope of relief according to subsequent circumstances, presenting themselves after the decree, but identical with those which were *data* for the measure of the actually decreed relief. 3 *Daniels Ch. Prac.*, 157, 192. This court recognizes this petition as equivalent to a bill, even where it introduces a new party, and a distinct claim peculiar to that party. 1 *Har. & Gill*, 504, *Baltzell vs. Foss*. All then that remains for this court's deliberation, is, whether we should be driven to the cumbrous and costly formality of a bill, in place of using the direct and simple process of petition engrafted on the decree, and on the cause in possession, already and fully, of the chancery court. That point is settled by the decision of this court just referred to.

By THOMAS S. ALEXANDER, for the appellee.

On proceedings in chancery, in execution of a decree passed by the appellate tribunal, the decree passed on appeal becomes the law of the case, and binds the chancellor in regard to the entire subject of the writ. The chancellor is not at liberty to presume that the Court of Appeals has erred in regard to any question actually decided, nor can he moot any question as presented by the record, other than those which are discussed by the court above. He must take the decree passed, as a decree rightly and definitively settling every subject and every question properly presented by every subject in litigation in the suit, and therefore, in executing the decree, he must confine himself strictly within the limits prescribed to him. He must award the relief given in the very form prescribed.

I do not understand this general principle to be questioned by the appellant's counsel. His argument is, that the decree of the Court of Appeals, assumes as a principle the liability of *Crook* for rent during his occupancy ; and the error in the decree, is attributed to the defect in evidence, there being no proof that *Crook* did occupy for a day after the date, which is assumed by the Court of Appeals. Upon this statement, it

appears that the decree is right, as founded upon the record. It disposes of the entire subject in controversy on the pleadings and proofs and nothing remains but to execute the decree.

The *gravamen* of the petition then is, that because of matters arising subsequent to the decree of the chancellor, and therefore not in issue at the time of the hearing of the cause by the chancellor, *McClellan* is entitled to an equity beyond that which has been awarded him. This is matter for a supplemental bill. *Mitf. Pl.*, 61, 62. *Story's Eq. Pl.*, sec. 328.

If there had been no appeal in the cause, and subsequent to the chancellor's decree, and before its execution, a new matter of equity had arisen to *McClellan*, he must have filed his supplemental bill, putting in issue the new matter, and claiming such further relief as that new matter entitled him to.

Upon appeal, the appellate tribunal is obliged to act on the record submitted to the chancellor. Is there error in the chancellor's decree? This is the question, and it is to be resolved upon the very state of pleadings and facts which were laid before the chancellor. If then, after the decree below, and prior to the decree above, new matter arises, this must of necessity, form the subject of a supplemental bill, because it cannot by any form of proceeding, be brought under consideration of the Court of Appeals.

In some cases, where the liability for a further account is apparent on the face of the record, the Court of Appeals, instead of passing a definitive decree, have limited themselves to an exposition of the principles on which the account is to be taken, and remands the cause, with directions to the court of chancery, to state the account.

In other cases, where that further liability is not sufficiently apparent, the Court of Appeals pass a final decree, and thereby compel the party to make his new matter the subject of a supplemental bill. The case of *Crapster vs. Griffith*, 6 *Har. and Johns.*, 144, is the very case now laid before the court. The claim there was for the hire of negroes, for time subsequent to the date of the auditor's report. The case decides that such hires may be recovered by a supplemental bill, and I rely on

the whole texture of the case to shew, that it is matter for a supplemental bill, and not for a petition.

FRICK, J., delivered the opinion of this court.

This court at the hearing of the former appeal between these parties, having directed an audit to be made in this court, thereupon remanded the cause to the chancery court, with directions to sell the mortgaged premises according to the usual course in such cases, unless *McClellan* should pay into that court, the sum ascertained by said audit in this court, to be due to the appellee.

The appellee, (*Crook,*) had been for a series of years, tenant of the mortgaged estate; and in the audit here referred to, the rents for which he had become chargable, were credited in favor of *McClellan* against the mortgage demand of *Crook*, up to the period on which the chancellor decreed, November 19th 1844. It is now averred, that *Crook* continued to occupy the premises as tenant, subsequent to the period thus assumed by the audit in this court, and that *McClellan* is consequently entitled to credits, in reduction of the sum decreed under said audit, to be brought into the court of chancery. He accordingly files his petition in that court, shewing the amount of rents, which he claims to have accrued in his favor by *Crook's* occupancy since the allowance in said audit.

But the chancellor considering the decree of the Court of Appeals conclusive, and that his authority was limited to the execution of the decree, dismissed the petition. And the question presented upon the present appeal is, whether there is error in the opinion thus expressed by the chancellor.

This petition, can in no view, be considered as part of the original proceedings, but as substantially new matter of relief, predicated upon the principles of the decree passed by the Court of Appeals. That decree disposed of the entire subject in controversy upon the pleadings and proofs exhibited; and the cause was remanded to the chancery court, with instructions to the chancellor to enforce the decree; to direct the mortgage property to be sold, according to the usual practice of the court of chancery, unless *McClellan* within the time specified, paid into court, the sum adjudged by this court to be due. It was a final

decree of this court, upon the appeal, and the only authority remaining to the chancellor over the subject, was to carry the decree into execution.   He was necessarily confined within the limits prescribed to him, whatever further and ulterior equity might have arisen in favor of *McClellan*, after the passing of the original decree by the chancellor.   The grounds for this equity claimed for *McClellan* was, that *Crook* continued to occupy the mortgaged premises, beyond the day assumed by the Court of Appeals; and that the rents chargable for such subsequent occupation, ought to be allowed in reduction of the sum decreed by the Court of Appeals, because the decree admits in principle, the liability of *Crook* for rent during his occupancy. Hence it is argued that the chancellor might, on this principle settled by the Court of Appeals, have entertained the petition, and granted the relief; considering the petition as supplemental to the original case, or, even as a new proceeding submitting a continuing equity, depending on a principle already decided by this court, to belong to the relations between the parties in the cause.

But all this necessarily requires the chancellor to open the decree of this court, which as before said, was intended to be conclusive on the chancellor.   He must consider that decree as rightly and definitively settling every question, properly presented to the court, and his action upon it is strictly confined within the limits presented to him.

The matter now suggested by the petition of the appellant, was not in issue at the time of the chancellor's decree, but has arisen subsequently; even if within the principles declared by the Court of Appeals.   Upon the record before the chancellor, and on the questions within that record, this tribunal has acted, and passed a definite decree, in relation to the entire subject presented to the chancellor, and to this court.   Thus, the whole subject then in litigation, has been finally disposed of by the decree of this court.   That decree has become the law of the case, and the chancellor cannot otherwise deal with the matters thus adjudicated, than in the form prescribed.

In presenting this case, upon argument by the counsel for the appellant, it is conceded, that "the difficulty arises from an

audit and decree having been made in this court, instead of remanding the case, with directions comprehensive enough to embrace matters of the same character as those passed upon, but ulterior to the period included in the chancellor's decree." But no evidence appears in the record, of such prospective equity and occupation by *Crook*, after the date assumed as the ground of decree. Where such liability is apparent on the face of the record, the practice suggested is the true one. And in such case, the court does limit itself to an exposition of the principles involved; and remands the cause, to have the account stated in chancery, within those principles. Such was not the presentation of this case, and therefore the decree was definitive and final.

As a final decree of this court, conclusive on the chancellor, he was right in rejecting the petition; and his decision is affirmed.

DECISION AFFIRMED.