ELLEN MAHONEY and JOHN C. MAHONEY vs. JAMES
MACKUBIN, Trustee.   JAMES MACKUBIN, Trustee
vs. ELLEN MAHONEY and JOHN C. MAHONEY.

*Usury—Admissibility of parol proof as to how the Considera-
tion mentioned in a Deed was to be paid—Trustee's commis-
sions—Question covered by a former appeal not open to re-
view—Fee for professional services in protecting a Trust
fund loaned on Mortgage not allowable out of the proceeds of
the Mortgage sale as against the Mortgagor—Interest—Hus-
band and Wife.*

A. as trustee held a mortgage of real estate made to him by S.  The
mortgaged property was sold by S. to B. for a stated sum.  The
deed from S. made no reference to the mortgage, but in fact the
payment of the mortgage by B. formed part of the consideration
mentioned in the deed.  On a foreclosure of the mortgage by A.,
it was, upon exceptions to the auditor's account distributing the
proceeds of sale, HELD :

1st. That whether the mortgage debt was tainted with usury or not,
was wholly immaterial in determining the price to be paid by B.
for the land.

2nd. That parol proof was admissible to show how the stated con-
sideration for the deed to B. was to be made up, and how it was
to be paid, and such proof in nowise altered, varied or affected
the deed itself.

3rd. That the mortgage debt could not be abated on account of any
usury that might have been paid or exacted from S. prior to the
purchase of the property by B.

The mortgage debt was due to A. as trustee for the wife of G.  Before
the mortgage note fell due, the time of its payment was extended
for one year, and B. indorsed thereon a written agreement by which
he assumed to pay the same at the expiration of the extension, with
interest.  At this time, and for several subsequent renewals, B.
paid to G. two per cent. per annum on the mortgage debt.  This
amount was paid to secure G's assent to the several extensions,

Mahoney *vs.* Mackubin, Trustee.

without which assent, A. refused to grant them.    Neither A. nor his *cestui que trust* received any part of the money so paid to G.   HELD :

1st. That the payments to G. could not be regarded as usury exacted and received by the mortgagee.

2nd. That if B. chose to submit to this exaction, or voluntarily paid these sums to G. in order to secure his assent to the extensions, and thus save his own property from sale under the mortgage, his remedy, if he had any, was against G. alone.

The deed from S. was in fact made to the wife of B., but B. acted through all the transactions not only as her agent, but himself paid out of his own funds the interest on the mortgage as well as the payment to G., and furnished all the money and property that went to make up the consideration mentioned in the deed, apart from the mortgage debt.   HELD :

That B's wife had no rights or equities which he would not have had if the deed had been made directly to him.

The order ratifying the sale under the mortgage allowed the mortgagee or trustee " the usual commissions," as well as his expenses. On appeal from said order, the same was affirmed by the Court of Appeals, and the cause remanded.   On exception to the auditor's report allowing commissions to the mortgagee, it was HELD :

1st. That the affirmance of the order of ratification of the sale, made it in its entirety the law of the case in all future proceedings therein, and binding not only upon the Court below, but upon this Court, and the allowance of commissions by the auditor, in conformity with that order was proper.

2nd. That it was no answer to this to say that the question of commissions, was not argued on the former appeal.   It was a question presented by the record on that appeal, and the appellant could then have raised it and have had that part of the order from which he appealed reversed, if it was erroneous.

On an *ex parte* petition of the mortgagee, an order was passed allowing him, out of the proceeds of sale, a certain sum for professional services rendered by him in defending the order ratifying the sale, and for his personal expenses in attending to the taking of testimony on the subject.   On exception to the auditor's account allowing this sum, it was HELD :

1st. That this was a charge that ought not to be allowed against the proceeds of sale, to the prejudice of the mortgagor.

2nd. That for the services thus rendered his claim was against the trust fund; which as trustee he invested in the mortgage, and must be prosecuted in the Court having charge of that trust.

3rd. That the proper mode of dealing with the interest on the purchase money, was for the auditor to allow interest on the mortgage debt to the day of sale, and for the order ratifying the account to contain the usual clause directing the mortgagee to apply the proceeds of sale according to the account, "with a due proportion of interest as the same has been or may be received."

CROSS-APPEALS from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER and ALVEY, J.

*Albert Ritchie,* for Mahoney and wife.

*James Mackubin,* for the trustee.

MILLER, J., delivered the opinion of the Court.

On the appeal from the order ratifying the sale of the mortgaged property made in this case, that order was affirmed by this Court at its April Term, 1879, and the cause was remanded in order that the proceeds of sale might be distributed. The auditor has now stated an account making such distribution, to which exceptions have been filed by Mahoney and wife, substantially to this effect: 1st, that large sums have been paid by Shipley and Mahoney by way of bonus and usury, which are properly credits on the mortgage debt, and have not been allowed; 2nd, that it was error to allow the mortgagee commissions on the amount of sales; and 3rd, that the allowance of $150 to the mortgagee as a counsel fee for his services in resisting the exceptions to the sale was also erroneous.

Upon the hearing of the exceptions the Court overruled the *first and third,* and sustained the *second,* and directed the auditor to state another account in accordance with that opinion. From this order both parties have appealed and we shall dispose of the three questions in their order.

1st. *As to the alleged usury.* The only testimony on this subject is that taken under the exceptions to the ratification of the sale, but we shall assume that that testimony may be used in support of the exceptions now filed to the auditor's account. The mortgage under which the sale was made was of a farm in Baltimore County, and was given by Shipley and wife on the 11th of February, 1870, to Mackubin as trustee, under a decree of the Circuit Court of Baltimore City, to secure the sum of $15,864.36, payable in five years, with interest, which was part of the trust funds held by him under that decree, and which that Court authorized him to invest in this mortgage, upon condition that it should be a first lien on the mortgaged property. On the day this mortgage was executed, Shipley and wife executed another mortgage on the same property to Thomas H. Gaither, to secure the sum of $1586.44, which amounted to two per cent. for five years on the sum loaned to Shipley. Gaither was the husband of the principal beneficiary of the trust funds held by Mackubin, and the latter, as he testifies, was accustomed to advise with Gaither, and be guided by him in his investments of that fund to the extent that he would make no investment like this without Gaither's sanction or approval; and it is clear from the testimony there was no other consideration for this mortgage to Gaither than his assent to this investment. But that mortgage was paid and satisfied in this way: Shipley needed the loan to pay off liens upon the property, and by his direction Mackubin so applied the money. Some of the lien holders, however, who, according to the assurances of Shipley, had promised to release their liens and take others subsequent to the mortgage, refused to do

so.  Mackubin then, in order to make the mortgage to himself as trustee the first lien, as the Court had required, paid off, out of his own money, liens, including the Gaither mortgage, to the amount of $9000, and took a second mortgage to himself individually for that amount. The release of Gaither's mortgage appears to have been made on the 20th of May, 1871.  After this, Shipley effected a sale of the property to Mahoney, and on the 15th of September, 1873, executed a deed conveying the same in fee to Mrs. Mahoney for the consideration of $45,000. At the time this sale was made and the deed executed, Shipley paid off Mackubin's individual mortgage for $9000, and also paid $864.36 of principal on the mortgage to him as trustee, thus leaving that mortgage to stand for the even sum of $15,000.  Now, assuming (but without intimating an opinion to that effect) that the transaction between Shipley and Gaither was made under such circumstances as to affect and taint this mortgage with usury, so that Shipley could, upon proper proceedings, have had the sum thus paid to Gaither eliminated from the mortgage debt, the question arises, does Mahoney stand in the same position, and is he entitled to the same relief?  This depends upon the terms upon which he purchased the property from Shipley.  The deed itself merely conveys the property in fee, and makes no reference to the mortgage.  But the testimony, as we read and understand it, shows that this $15,000 mortgage constituted part of the consideration mentioned in the deed, and that the balance of it was made up of city property conveyed to Shipley by Mahoney, and the latter's note for $1500, which he afterwards paid.  This, as we understand his testimony, is Mahoney's own version of the transaction.  Baker, the agent of Shipley, who negotiated the sale and made the contract with Mahoney, says the farm was traded to Mahoney subject to a $15,000 mortgage, that his business as Shipley's agent, was to raise

the other $10,000 to pay off the second mortgage, and as all the papers in the transaction passed simultaneously, it was virtually one act, to pay off the second mortgage and pass the farm over to Mahoney subject to the $15,000 mortgage as per terms of contract.

In our judgment the testimony establishes the fact that it was the understanding and agreement between the parties when this contract of sale or exchange of properties was made, that Mahoney should take the farm subject to, and should assume and pay, this specific mortgage debt of $15,000, as part of the consideration mentioned in the deed and as part of the price he was to pay for it. This being the character of the contract the case falls directly within the decision in *Hough vs. Horsey,* 36 *Md.,* 181. Applying the reasoning of the Court in that case, we say here: If this mortgage debt is to be reduced at the instance of Mahoney by reason of the alleged usury, it is manifest he will get the farm for less than he agreed to pay for it. Whether that debt was tainted with usury or not, was wholly immaterial in determining the price agreed to be paid for the land. The effect of sustaining his exception on this ground would be to relieve him from doing what he has expressly agreed to do, and upon the faith of which he obtained the conveyance for the land embraced by the mortgage. Such a proposition cannot be entertained by a Court of equity for a moment. He must pay the mortgage debt according to his contract of purchase, and leave the question of usury to be settled between the mortgagor and mortgagee. The only difference between the two cases is that in *Hough vs. Horsey,* the agreement to pay the mortgage debt was expressed in the deed itself, while here the deed merely states the consideration to be $45,000, and the fact that the $15,000 mortgage debt formed part of it, and was to be paid by the purchaser is established by parol proof. But we see no difficulty whatever in allowing such proof to be introduced. It merely

18 v. 54.

shows how the stated consideration was made up and how it was to be paid, and in nowise alters, varies or affects the deed itself. But even if such be the effect of this proof, still having been admitted in the Court below without exception to its admissibility or competency, it must be considered and allowed by this Court to have that effect. *Gibbs vs. Gale,* 7 *Md.,* 76. We are therefore clearly of opinion the mortgage debt cannot be abated on account of any usury that may have been paid by or exacted from Shipley prior to the purchase of the property by Mahoney.

The mortgage note for the principal fell due on the 11th of February, 1875. Shortly before that date the time of its payment was extended for one year, and Mahoney endorsed thereon a written agreement by which he assumed payment of the $15,000 on the 11th of February, 1876, with interest from the 11th of February, 1875. At this time and for several subsequent renewals or extensions up to August, 1877, Mahoney paid to Gaither two per cent. per annum on the $15,000, making in all the sum of $750. It is apparent, from the testimony that this amount was paid to secure Gaither's assent to the several renewals, and that Mackubin refused to grant the extensions without Gaither's approval. It is very clear, however, that Mackubin, as mortgagee, or as an individual, never received any part of this money, and never derived, directly or indirectly any benefit therefrom. The arrangement for its payment was made through him, but after full explanation, both to Shipley and Mahoney, of his relation to the fund as trustee under a decree of a Court of equity, and his testimony is very emphatic that he could not and would not receive more than six per cent. interest on funds thus invested by him under the Court's order. Nor was any part of this money ever paid to Mrs. Gaither, the beneficiary under the trust. How, then, shall this payment to Gaither be treated?

We do not think it can be regarded as usury exacted and received by the mortgagee. Gaither himself was a stranger to the mortgage, and had no right, title, or claim to the fund invested therein. If, then, Mahoney chose to submit to this exaction, or voluntarily paid those sums to him in order to secure his assent to these extensions, and thus save his own property from sale under the mortgage, we think his remedy, if he has any, is against Gaither alone. We do not think that by reason of this transaction the mortgage debt was tainted with usury, and it follows there was no error in refusing abatement therefrom on this account. In thus disposing of the question of usury we have treated the case as if Mahoney himself had been the purchaser of the land, and the deed therefor had been made to him, because, though in point of fact the deed was made to his wife, yet he acted throughout all these transactions, not only as her agent, but paid out of his own funds the interest on the mortgage, as well as the payments to Gaither, and furnished all the money and property that went to make up the consideration mentioned in the deed. apart from the $15,000 mortgage debt. It is plain from the testimony that she has no rights or equities which he would not have had if the deed had been made directly to him.

2nd. *As to Commissions.* The sale was made by the mortgagee in pursuance of the power contained in the mortgage, which directs that the proceeds shall be applied "first to the payment of all expenses incident to such sale." Whether these terms are broad enough to embrace the allowance of commissions to the mortgagee who makes the sale himself, for the responsibility he assumes by giving bond to apply the proceeds under the orders of the Court, and for his skill and trouble in making the same, or whether they would authorize such allowance either expressly or by implication to a third party named in the mortgage and thereby empowered to sell, are questions in

regard to which there is a difference of opinion among the Judges who heard this case.   But as the case now stands we regard the question of the allowance of commissions as already conclusively adjudicated.   The order ratifying the sale allowed the mortgagee or trustee "the usual commissions," as well as his expenses.  From that order an appeal was taken by the present appellant, Mahoney, and on that appeal that order was affirmed by this Court and the cause was remanded.   The affirmance of that order makes it the law of the case in all future proceedings therein, and binding not only upon the Court below, but upon this Court.  It is no answer to this to say the question was not argued by the appellant on the former appeal.   It was a question presented by the record on that appeal, and the appellant could then have raised it and have had that part of the order from which he appealed reversed if it was erroneous.  The objection to the order as to the allowance of commissions might then have been taken, and it was the duty of the appellant then to have raised it.   As was said by this Court in *Young vs. Frost,* 1 *Md.,* 395, "every person is bound to take care of his rights and to vindicate them in due season and in proper order ; this is a sound and salutary principle, intended to prevent litigation and to preserve peace."   That order was undoubtedly the subject of an appeal.   It was expressly affirmed by the decree of this Court.   That affirmance makes the order in its entirety the law of the case, and it cannot now be opened either by the Court below or by this Court. *McClellan vs. Crook,* 7 *Gill,* 333 ; *Young vs. Frost,* 1 *Md.,* 377.   For these reasons, we think, there was error in sustaining the exception to the allowance of these commissions.

3rd. *As to the* $150.   This sum was allowed to Mr. Mackubin, the mortgagee, for professional services rendered by him in defending the order ratifying the sale, and for his personal expenses in attending to the taking

of testimony on that subject. The allowance was made by the auditor under a special order of the Court dated the 25th of November, 1878. That order was passed upon the *ex parte* petition of Mr. Mackubin, and we are clearly of opinion it is open for review on this appeal. And we are also equally clear in our opinion that this is a charge that ought not to be allowed against the proceeds of sale, to the prejudice of the mortgagor. For the services thus rendered his claim is against the trust fund, which, as trustee, he invested in this mortgage, and he must prosecute that claim in the Court having charge of that trust. It follows there was error in overruling the exception to this allowance.

We find no error in the mode in which the account deals with the question of interest. The auditor has calculated interest on the mortgage debt down to the day of sale. The order ratifying the account, when passed, will contain the usual clause directing the mortgagee to apply the proceeds of sale according to the account, " with a due proportion of interest as the same has been or may be received." This is the usual chancery practice in such cases, and under it no injustice can be done to any one in disposing of the interest received on the credit instalments of the purchase money.

It follows that so much of the order appealed from as overrules the exceptions founded upon the charge of usury must be affirmed, and the rest of it reversed, and the cause remanded in order that an account may be stated in conformity with the views expressed in this opinion.

> *Order affirmed in part, and*
> *reversed in part, and*
> *cause remanded.*

(Decided 30th June, 1880.)