## KELLY *vs.* MATTHEWS.

When pleas are stricken out, they are considered as taken off the files. If the defendant would bring them before this Court, he must do it by setting them out in a bill of exceptions.

When, in a suit on a note, oyer is craved and the instrument filed, if the defendant does not demur for variance, but pleads and goes on to trial, he accepts the note, and so makes it part of the record and of the declaration; and it is, as it were, incorporated *in haec verba*, with the declaration.

He cannot then move to exclude the note for variance, when offered in evidence on the trial.

Whether the omission of the middle letter of a name in describing a note is a variance —*Quere ?*

Kelly *vs.* Matthews.

The consideration of a note sued on, can only be impeached, under our statutes, by special plea verified by affidavit.

In an action against a security, on a note payable to two persons, if he sets up as a defence that he had required suit to be brought against the principal, which had not been done within the time prescribed by the Statute, he must prove legal notice to *both* payees.

A judgment will not be reversed for the exclusion of evidence which is wholly immaterial.

THIS was an action of debt, tried in the Randolph Circuit Court, in April, 1842, before the Hon. THOMAS JOHNSON, one of the circuit judges. Elijah B. and Overton B. Matthews declared against William Johnston, Andrew C. Kelly, and James Johnston, on a note for $118, payable by "the defendants," to the plaintiffs, by the description of E. B. and O. B. Matthews, administrators of E. A. Matthews, deceased. Discontinued as to the Johnstons, not served—oyer craved by Kelly and granted. He then pleaded payment *ad diem*, payment *post diem*, and *nil debet* without affidavit. At the next term Kelly filed three other pleas, two of which were stricken out—replications to pleas of payment, and issue—and issue to plea of *nil debet*. Demurrer to 4th plea overruled, and issue—*all* in short on the record.

The substance of the 4th plea was, that Kelly signed the note as security for William Johnston, and after it fell due, on the 17th of June, A. D. 1841, he gave to the payees written notice, requesting them to commence suit forthwith on it, and that they did not within thirty days thereafter institute suit thereon, &c. Upon these four issues verdict for the plaintiffs for debt $118, damages $23 12, and judgment accordingly. On the trial, the plaintiffs by permission of the court, read in evidence the note filed on oyer, which varied from the declaration only in being signed, by one defendant, by the signature of *James F. Johnston*, instead of *James Johnston*. To the admission of which in evidence, the defendant excepted.

The defendant offered to prove that there was no consideration whatever passed from the plaintiffs to the makers of the note, which evidence was rejected, and exceptions.

Kelly then offered to read in evidence the following notice: "Pocahontas, Arks. 17th June, '41. Mr. Elijah Mathis, Sir—The note that I stand security for William Johnston for the hire of two negro women for the estate of Obediah Mathis, I wish you to push on, as I

cant stand responsible any longer for the same the amount if I recollect is something like one hundred dollars. Yours, &c. Andrew Kelly." And offered to prove by a witness that he had delivered to the said Elijah B. a true copy of the notice in the county of Randolph, more than thirty days prior to the commencement of that suit, which service plaintiffs admitted, but denied its sufficiency in law to sustain the plea; and defendant also offered to prove that he signed the note as security, and that it was given by William Johnston to the plaintiffs for the hire of two negro women of the estate of E. A. Matthews deceased, of which estate the plaintiffs were administrators; and that it was the only note which the plaintiffs held against the defendants; all of which, except as to the service, was excluded; and Kelly excepted.

*Wm. Byers*, for appellant.

The judgment should be reversed. 1st, Because the court sustained the motion of the plaintiffs to strike out the 5th and 6th pleas. *Graham's Pr.* 249. 2 *Chit. Rep.* 239. 1 *J. R.* 462. 1 *Ch. Rep.* 715. 3 *D. & K.* 621. 2 *Str.* 1234. 10 *East.* 237. 2 *New. Rep.* 188. 4 *Cow.* 141. *Crary vs. Ashley & Beebe*, 4 *Ark. Rep.* 203.

2d. The court erred in overruling the motion to exclude from the jury the note offered in evidence. The one described in the declaration is stated to have been executed by *James Johnston*, and the note offered in evidence is stated to have been executed by *James F. Johnston.*

3d. Because the court sustained the motion to exclude from the jury the evidence set forth in the second bill of exceptions. The evidence excluded would have made a legal defence to the action; *Rev. Stat.* 722, and we conceive would have supported the allegations in the 4th plea. It at least would have conduced to prove the issue, and if so it was wrongfully excluded.

4th. The court erred in excluding from the jury the evidence offered and set forth in the third bill of exceptions. At common law, in debt upon parol contract, the plaintiff had to show a consideration. In this case, the appellant, under the plea of *nil debet*, offered to prove

29

that there was no consideration for the note, which in law was a bar to the action.

*Fowler*, contra.

The note was properly read in evidence, as it corresponds both in substance and form with the instrument declared on; and it was not denied by plea under oath by the party charged with having executed it. *Rev. St.* 633, *sec.* 102, 104.

The evidence offered by Kelly to impeach the consideration of the note was properly excluded, there being no proper plea interposed supported by affidavit. *Rev. St.* 629, *sec.* 74, 72.

. The evidence offered by Kelly in relation to the *notice* was also properly excluded, the paper offered as notice showing clearly and conclusively upon its face, that it applied to a different transaction, and not to the note in controversy. See *Rev. St.* 722, *sec.* 1, *et seq.*

*By the Court*, RINGO, C. J. The first matter assigned as error is the exclusion from the record of the 5th and 6th pleas filed by the appellant. These pleas were stricken out, or set aside by order of the court, and the effect of that order was to divest the record of them, as completely as if they had never been presented or filed in the case, or as if, according to the ancient and more approved practice, they had been taken from the files of the court. Therefore, if the party pleading them was dissatisfied with the decision of the court striking them out, and desired to question its correction in the Supreme Court, it was incumbent upon him to have them made parcel of the record, by incorporating them in a bill of exceptions, properly taken to the opinion of the court excluding them from the case. This he wholly failed to do, and they form no part of the record, and this court has no legitimate means of ascertaining whether they were correctly excluded or not. The clerk has in this instance improperly transcribed them into the transcript of the record before us, but this, as it has been repeatedly held, does not make them part of the record, or authorize us to regard them in adjudicating the case.

The second question is, did the court err in admitting as evidence

Kelly vs. Matthews.

to the jury, the note declared on ?   At the trial the plaintiffs offered
to read it to the jury; the defendant objected on the ground that it
varied from the note described in the declaration, in this; that the
note sued on is described in the declaration as having been made by
William Johnston, Andrew C. Kelly, and James Johnston; but that
offered in evidence purported to have been made by William John-
ston, Andrew C. Kelly, and James *F.* Johnston; and therefore it is
urged that they are different instruments.   This objection was, in our
opinion, in every view of the subject untenable.   It was so, because
the defendant, by craving oyer of the instrument sued on, had caused
its production in court, and by accepting the same when filed in court
as oyer, had at the same time made it part of the record and of the
declaration, and as it were incorporated it, *in haec verba*, into the
declaration.   There could, of course, be no variance between the
declaration and note offered in evidence, as the record shows it to
have been the same of which oyer had been so given.   The only
method by which the defendant could have availed himself of the
variance, (if there had been any), after he had made it part of the
record on oyer, would have been by demurrer to the declaration, as-
signing it thereon specially as a ground of demurrer.   But we are
strongly inclined to believe that the supposed variance between the
name of James Johnston, as stated in the declaration, and that of
James F. Johnston subscribed to the note, would not in any view of
the subject, have been material; for it may well be questioned wheth-
er the middle letter in a name, or the initial letter of a name placed
between the christian and surname, forms any part of the christian
name of a party.   It is said the law knows only of one christian name;
and there are adjudged cases strongly countenancing, if not fully es-
tablishing, that the omission of a middle letter is not a misnomer or
variance.   *Keene vs. Meade, 3 Pet.* 7.

The third question is, did the court err in excluding the testimony
offered by the appellant to prove that the note sued on was given
without any consideration whatever?   On the trial the appellant pro-
duced a witness, and offered to prove by his testimony that the note
in controversy was executed by himself and his co-promissors, with-
out any consideration whatever.   But this testimony was objected to

by the appellees and excluded by the court.    In the Revised Stat-
utes, sec. 102, of chapter 116, it is enacted that "when any declara-
tion, petition, statement, or other pleading shall be founded on any
instrument or note in writing, whether the same be under seal or not,
charged to have been executed by the other party, and not alleged
therein to be lost or destroyed, such instrument shall be received in
evidence, unless the party charged with having executed the same,
deny the execution of such writing by plea supported by the affidavit
of the party pleading, which affidavit shall be filed with the plea."
Sec. 104 of the same chapter provides, that "the pleas of *nil debet*
and *non assumpsit*, may be filed in all actions of debt or assumpsit
founded on any instrument of writing not under seal; but such pleas
shall not put in issue the execution of such writing, unless the same
shall be verified by affidavit."    Sec. 74 of the same statute, declares
that "in any suit founded on any note or instrument in writing, under
the seal of the person charged therewith, the defendant may by spe-
cial plea, impeach or go into the consideration of such writing, in the
same manner as if such writing had not been sealed."    And sec. 75
provides, that "all pleas impeaching the consideration of any such in-
strument or note in writing, *whether sealed or not*, shall be supported
by the affidavit of the defendant, or some other person for him, stating
that the facts set forth in such plea are true, as far as detailed as such
from his own knowledge, and that he believes them to be true as far
as related from the information of others."

From these statutory provisions, we think there can be no doubt,
that any instrument which is made the foundation of an action, and is
charged by the pleadings to have been made by the persons who,
from its face, appear to have made or executed it, is admissible evi-
dence in such cause, if properly described, whatever form of pleading
may be adopted, unless the execution thereof be expressly denied by
plea supported by affidavit, or unless nil debet or non assumpsit be
pleaded, verified by affidavit.    And in such case, that is, where the
making or execution of the instrument is then put in issue, that fact
alone is to be ascertained and determined; and under this state of
pleading, no testimony impeaching the consideration of such instru-
ment, can be received; but the instrument, if the execution as charg-

ed by the pleading, be established, must be admitted as evidence, binding upon those by whom it was executed, unless they shall by a special plea supported by affidavit as provided for by the 74th and 75th sections of the statute above quoted, impeach the consideration thereof; then, but not otherwise, legal testimony may be admitted to impeach the consideration of the instrument sued on. In this case there was no such plea, nor is the plea of nil debet supported by affidavit. We are therefore clearly of the opinion that the testimony offered to impeach the consideration of the note was correctly excluded.

The fourth objection questions the correctness of the decision of the court, excluding from the jury the testimony offered by the appellant to prove that he executed the note upon which this action is founded, as security only for William Johnston; and that he did, after the right of action thereon had accrued, by notice in writing, require the plaintiffs forthwith to commence suit against the said William Johnston and the other parties liable thereon, and that they had failed to do so within thirty days after the service of such notice, as alleged in his fourth plea. To support this plea and establish these facts, the appellant produced, and offered to read as evidence to the jury, a notice in writing as follows, to wit:

"Pocahontas, Arks., 17th June, '41.

Mr. Elijah Mathis, Sir—The note that I stand security for Wm. Johnson, for the hire of two negro women for the estate of Obadiah Mathis, I wish you to push on, as I can't stand responsible any longer for the same. The amount if I recollect is something like one hundred dollars. Yours, &c., Andrew Kelly."

The appellees admitted the service of said notice on Elijah B. Matthews, one of the plaintiffs below, but denied its sufficiency in law to maintain the issue, and therefore objected to his reading it to the jury. He also produced a witness and offered to prove by his testimony, that he executed the note in controversy, as security only, for William Johnston, but this testimony was also objected to by the appellees, and both this and the notice excluded from the jury. The notice was predicated upon the 1st and 2d sections of the 137th chapter of the Revised Statutes; but inasmuch as it embraced only one

of the obligees named in the note, and was not even served upon the others, it was on that ground clearly insufficient; and did not impose upon the obligees the necessity of instituting suit on the note within the time prescribed by law, as in cases where legal notice to sue is given by a security to all of the obligees, or subject them to the same consequences which in such case would ensue upon their failure. This statutory mode of proceeding was devised expressly for the ease and benefit of securities; and those who would avail themselves of it, must in every respect comply substantially with the provisions of the statute, and where there are several obligees named in the instrument, cause the prescribed notice to be served upon the whole of them. This we understand to be required by the statute, and the reason of the rule must be obvious to all. The plea alleges notice in writing to both obligees. The notice to one only varies from, and entirely fails to support, this allegation, and therefore upon this ground also it was inadmissible as testimony upon the issue joined on the fourth plea. And for these causes it was, in our opinion, properly excluded from the jury.

The other testimony offered and excluded depended upon the notice, and was designed to establish the fact, that Kelly executed the note as security, and not as principal debtor, with the knowledge of the obligees, and that they held no other note of the like description against him. And consequently, as the notice was properly excluded, this testimony, whether it would have been otherwise competent or not, becomes wholly immaterial, and there was no error in excluding it.                                        Judgment affirmed.