DAVID C. GAMBLE ET AL., Appellants, *v.* CHARLES GIBSON, Respondent.

May 10, 1881.

1. Where a referee's report in an equity proceeding finds the defendant chargeable upon all the items of a claim, and, on appeal, there being no contest upon the facts, the evidence not being preserved, the judgment is affirmed, except as to the conclusion of law upon one item, the Supreme Court holding the defendant not chargeable upon that item, and remanding the cause for further proceedings in accordance with its opinion; the trial court errs in not entering judgment in accordance with such opinion.

2. In such a case it is error for the trial court to again refer the exception upon which the reversal was had.

3. No facts having been controverted upon the appeal, the parties were concluded as to the facts, by the finding of the referee, confirmed by the Circuit Court.

4. The defendant, by contesting the referred exception before the referee, did not waive his exception to the action of the trial court in making the re-reference.

5. In interpreting the mandate of an appellate court, where its directions are not clear, the opinion of the court will be looked to for explanation.

APPEAL from the St. Louis Circuit Court, GOTTSCHALK, J. *Reversed and remanded.*

MARTIN & LACKLAND, for the appellants.

CHARLES GIBSON, *pro se.*

THOMPSON, J., delivered the opinion of the court.

At the December term, 1867, of the Probate Court of St. Louis County, Charles Gibson presented his final settlement as executor of the estate of Hamilton R. Gamble, deceased. The devisees and distributees filed twenty-one

exceptions to the report, which, by consent, were referred
to a referee, upon the incoming of whose report a judg-
ment was rendered, from which the executor appealed to
the Circuit Court, where, under the statute, the whole mat-
ter was heard *de novo* before Edward T. Farish, another
referee appointed for that purpose. Both parties, the ex-
ecutor and the exceptors, excepted to his report, but it was
confirmed by the court, judgment rendered thereupon,
and from this judgment both parties appealed to the gen-
eral term. The general term affirmed the judgment of the
special term, and the executor alone appealed to the Supreme
Court. He made no contest in the Supreme Court upon
the findings of fact of the referee; his bill of exceptions
did not contain the evidence upon which the referee's find-
ings were based, but contained only the report, which em-
braced his findings of fact and conclusions of law as to the
exceptions to the executor's final account which were con-
tested before him. The case is reported in 59 Mo. 585. In
this state of the record, the Supreme Court had nothing
before it but the conclusions of the referee upon the facts
found by him. All of these conclusions were confirmed by
the Supreme Court, except his conclusion upon the facts
found on the seventh exception. This exception sought to
charge the executor with a loss which the estate had sus-
tained from the unauthorized act of the executor in the year
1864, in converting certain funds of the estate, which con-
sisted of the national currency, into gold. The referee
found, under this exception, in favor of the exceptors, in
the sum of $6,613.30, with interest, making an aggregate
finding against the executor, under this exception, of
$9,386.41. The referee having found, however, that the
executor acted in good faith in this matter, and with reason-
able discretion, the Supreme Court held that the conclu-
sion of law of the referee, confirmed by the judgment of
the Circuit Court, that the executor was chargeable with this
loss, and with interest on the same, was erroneous; and for

this error alone the judgment was reversed and the cause remanded.

The usual mandate was sent down to the Circuit Court, directing the court to proceed in conformity with the opinion of the Supreme Court. Thereupon the executor moved the court to enter judgment in accordance with the report of the referee, except as to the seventh or gold exception ; as to that, the seventh exception, to render judgment for the executor upon the facts found and reported by the referee. This the circuit judge, after having taken the opinion of the judges in general term, declined to do, and upon this ruling the executor took a bill of exceptions. The executor then applied to this court for a *mandamus* to compel the circuit judge so to enter judgment, which this court refused upon the obvious ground that, though a *mandamus* will lie to compel an inferior court to proceed in a cause, it cannot be resorted to to instruct the court how to proceed. *The State ex rel.* v. *St. Louis Circuit Court*, 1 Mo. App. 543. The exceptors then moved that the whole case be again referred to a referee, to retry the issues of fact and law, which motion the court denied, and the exceptors excepted. The court then, against the objection of the executor, referred the cause to Edward T. Farish, " to retry the matter contained in the seventh exception to his report heretofore filed herein." Farish declining to act, Nathaniel Holmes was appointed in his place, and a supplementary order was made defining the scope of inquiry before him, which did not materially change the previous order. Under this order, the facts relating to the seventh exception were heard *de novo* before the referee Holmes, and he rendered a report thereupon, finding " that the executor, in these purchases of gold, acted in good faith, according to his best judgment, for the interest of the estate," and that his action in this respect " was a prudent and faithful discharge of his duty as executor and trustee, and cannot be considered as unauthorized or imputed as a fault, or failure of

duty ;'' and the referee accordingly found in conformity with the judgment of the Supreme Court, that the executor could not justly be held personally responsible for the loss which the estate had thus sustained. He found, however, that the loss which the estate had thus sustained was $6,094.08, instead of $6,613.30, as claimed by the executor and as found by Farish, the previous referee. With some slight modification, the court now confirmed the report of Holmes, and upon this report and the report of Farish, except so far as the latter report related to the seventh exception, it rendered judgment against the executor for a balance of $967.64, and charged against him the costs of the proceedings had since the reversal of the cause by the Supreme Court.

We have arrived at the conclusion that the Circuit Court committed no error in refusing, upon the reversal of its decree by the Supreme Court, to refer the whole case again to a referee. We have also come to the conclusion that in refusing to enter judgment upon the request of the executor, in conformity with the opinion of the Supreme Court, the Circuit Court committed error, and that it was error again to refer the seventh exception to a referee, upon an order which reopened the facts for contestation. In the view we take, the failure of either party to appeal to the Supreme Court from the judgment confirming the report of Farish, referee, upon a bill of exceptions which brought before that court for review the facts upon which his findings were based, had the effect of conclusively settling those facts as the facts of the case, so that it was not competent for the Circuit Court at a subsequent term to reopen the case as to any of those facts. It is to be remembered that this proceeding is in the nature of a suit in equity. It involves matters of complicated account between an executor and devisees and distributees whose interests are dissimilar. In such proceedings, the well-known practice of courts of chancery has always been to mould their orders

and decrees in such manner as to settle the diverse rights of the respective parties. A final decree in such a proceeding is not an entire thing, which must stand or fall together in all its parts, in the sense in which a judgment at law is an entire thing; but it may embrace in substance the elements of several judgments. It is not necessary that all the plaintiffs recover against all the defendants, or that all the defendants go hence and have judgment against all the plaintiffs; but the chancellor may mould his decree so that some of the plaintiffs shall recover and others shall pay, and some of the defendants shall recover and others shall pay, according to the respective equities of the different parties to the suit. Upon an appeal, the case is re-examined by the appellate tribunal as it should have been examined by the court below; and nothing is better settled in chancery practice than that a reversal by an appellate court of a decree in a chancery case reopens the case only so far as the appellate court directs it to be reopened. All matters not remitted by the appellate court to the court below for re-examination, stand as conclusively adjudicated, and are not re-examinable, either in the court below or in the appellate court on a future appeal. *Supervisors* v. *Kennicott*, 94 U. S. 498, and cases cited; *Cassedy* v. *Bigelow*, 27 N. J. Eq. 505; *McNairy* v. *Mayor*, 2 Baxt. 251; *Biscoe* v. *Tucker*, 14 Ark. 515, 523; *McClellan* v. *Crook*, 7 Gill, 333; *Young* v. *Frost*, 1 Md. 377, 396. The rule is so strong that it prohibits the chancellor from reopening the case for the purpose of correcting obvious errors, which were evidently overlooked by the Supreme Court, or not brought to its attention. *McNairy* v. *Mayor, supra.* " No matter how injurious the consequence may be, the parties in the appellate court may be bound by the submission of a cause upon a diminished record, according to which one has affirmed and the other has denied that there is error. The appellate court, with a deep sense of all the obligations resting upon it, may sometimes mistake the

record, and will be liable to err in matters of law so long as men are liable to differ in opinion. But the decision in the particular case is forever the law of that case, * * * and is conclusive, not only of those points that appear to be noticed or decided by the opinion of the court, but of every question of law or fact which was presented upon the record, and which was necessary to have been decided in order to enable the appellate court to arrive at such conclusion." *Biscoe* v. *Tucker*, 14 Ark. 515, 523.

We have no distinctive bill in equity in Missouri; but our Code, in blending all kinds of civil actions into one, obviously did not intend to deprive equitable proceedings in our courts of that flexibility which characterizes proceedings in courts of chancery. This is apparent from our statute relating to referees (Rev. Stats., sect. 3606), which empowers the court in cases like the present, where the trial of an issue of fact shall require the examination of a long account on either side, either to direct the referees to hear and decide the whole issue, or to report upon any specific question of fact involved therein. The reason of the rule remains as strong under our system of procedure as under the old system. It is a reason founded upon public policy, which favors the speedy determination of litigation. The repose of society and the interests of the State are involved in it. It often exacts a sacrifice of the rights of parties; it always exacts that litigation shall be brought to an end when it can be done without sacrificing substantial rights. If a complicated suit in the nature of a suit in equity, which embraces within its comprehensive scope many different matters, is to be wholly opened for the taking of evidence and a rehearing *de novo*, whenever an appellate court may overrule a court of first instance as to any one of these matters, then such litigation will be practically without end; for it will be scarcely possible that there should not, in such cases, be differences of opinion on some point or other between the original and appel-

late court; and every new trial will produce new questions and new reversals. In such a state of procedure, one of two things would happen: either persons having grievances which could only be settled in chancery proceedings, would take the law into their own hands by violence, or else appellate courts would, in many instances, ignore errors which would result in substantial wrong, rather than subject the parties to the greater grievance of reopening the whole case for a new contestation. Our law does not produce any such results.

But, if we had any doubt upon this question as a question of practice, our doubts would be concluded by the decision of the Supreme Court in *Hurck* v. *Erskine*, 50 Mo. 116, which, as we read it, conclusively settles this question. That was a suit in the nature of a suit in equity by a trustee to compel two beneficiaries in the trust to interplead as to their respective interests in the fund in his hands. The case was tried by the court, which made certain findings of fact, and upon these findings of fact rendered judgment that the two beneficiaries should share in the fund *pro rata*. On appeal the Supreme Court took a different view of the law, holding that Erskine, one of the beneficiaries, was entitled to payment in full in preference to Price, the other beneficiary; and, as in this case, the Supreme Court reversed the judgment and remanded the cause, to be proceeded with in accordance with the opinion in the case. When the case came back, the Circuit Court, instead of entering a judgment of distribution on its findings of fact, as the Supreme Court had indicated in its opinion, permitted Price to file a new answer, raising in substance the same issue which had already been tried; and this new issue was, against the objection of Erskine, tried by a jury, which made a different finding of fact from the previous finding of the Circuit Court. On an appeal from the judgment on this verdict, it was held that the Circuit Court committed error in reopening the facts for trial; and for this reason its judgment was again

reversed, with directions to render a judgment of distribution in conformity with the previous opinion of the court. " The only question for our consideration," said Adams, J., in giving the opinion of the court, " is, what was the effect of the reversal of the first judgment? The finding of the court was not objected to by Erskine, for it was in his favor. He made no motion to set that aside. His motion was to modify the judgment of distribution. The Supreme Court did not set the finding aside. The judgment of distribution alone was acted on by this court, and that judgment was reversed and the cause remanded. For what purpose? Not to retry the issue, which had been found for Erskine, and still stood upon the records of the Circuit Court untouched by anything that had transpired in the Supreme Court; but the cause was remanded merely that the Circuit Court might enter up a judgment of distribution according to the equities of Price and Erskine as declared by this court."

In like manner we must hold in this case that, neither party having appealed to the Supreme Court upon a bill of exceptions embracing the evidence before the referee Farish, although either of them was at liberty to do so, the finding of this referee on the facts, confirmed by the Circuit Court, stands as a conclusive determination of the facts of the case. The decision of the Supreme Court, overruling all the objections of Gibson to the referee's conclusions of law as confirmed by the Circuit Court, except his conclusions of law upon the facts found by him under the seventh exception, left every matter in the case untouched and concluded, and nothing was open for reinvestigation. This conclusion of law of the referee was that Gibson should be charged with $9,386.41, principal and interest, as loss which the estate had sustained by reason of his act in converting currency into gold. The decision of the Supreme Court, overruling every other objection which had been made to the judgment of the Circuit Court, was that this was an erro-

neous conclusion of law, and it accordingly reversed the judgment and remanded the cause. The usual mandate was then sent down, directing the Circuit Court to proceed in conformity with the opinion of the Supreme Court. The concluding words of the opinion are: "For the error in charging on the loss of the gold purchases, the judgment should be reversed and the cause remanded." This did not mean that the entire judgment was overturned both as to law and fact, because this would make the concluding sentence contradict the rest of the opinion.

In interpreting the mandate of a court of error, where its directions are not clear, the opinion of the court will be looked to for explanation ( *West* v. *Brashear*, 14 Pet. 51), and the concluding mandatory words of an opinion will be interpreted with reference to, and controlled by, the preceding matter in the opinion. Thus, in *Kennicott* v. *Supervisors*, 16 Wall. 452, 471, which was a suit in equity, the Supreme Court of the United States, having settled the controversy substantially in favor of the complainants and contrary to the decree of the Circuit Court, concluded its opinion with the words, "The judgment must be reversed and a new trial had." The mandate as sent down commanded "that such execution and further proceedings be had in conformity with the opinion and decree of this court, as according to right * * * ought to be had." The Circuit Court refused to reopen the case for further hearing, and its decision was affirmed by the Supreme Court. *Supervisors* v. *Kennicott*, 94 U. S. 498. "Technically," said Chief Justice Waite, "there can be no 'new trial' in a suit in equity; and as our mandates are to be interpreted according to the subject-matter of the proceeding here, and if possible, so as not to cause injustice ( *Story* v. *Livingston*, 13 Pet. 359), it is proper to inquire what must have been intended by the use of that term in the decree, since it cannot have its ordinary meaning. For that purpose we held in *West* v. *Brashear*, 14 Pet. 51, that resort might be

had to the opinion delivered at the time of the decree. Availing ourselves of this rule, it is easy to see that there could have been no intention to open the question for further hearing upon the issues presented and decided here. There is not an expression of any kind indicating any such determination. On the contrary, it is distinctly declared that the mortgage was valid, and that the complainants were entitled to their judgment. Under these circumstances it is apparent that the words 'new trial' were used to convey the idea of such further action as should be found necessary to carry into effect what had been already decided. No error has been assigned upon the proceedings in the Circuit Court, under the mandate, construed in this way, and the decree of the court is therefore affirmed." This case was much stronger upon the point of practice we are considering than the case before us. It shows that it is the whole opinion of the appellate court, and not merely the mandatory words with which it is concluded, that the Circuit Court is to look to in determining how to proceed.

The only doubt which we have had was, whether Gibson, by entering into the contest of the merits of the seventh exception before the referee Holmes, did not waive his exceptions to the refusal of the Circuit Court to enter judgment in accordance with the opinion of the Supreme Court. Upon the best consideration we have been able to give, we are of opinion that his conduct did not amount to such a waiver. The reasons for the rule which requires a party demurring to a pleading to stand on his demurrer at his peril, or else abandon it by going to trial on the merits, seem to us not to apply here. Here, as Gibson was not entitled to a *mandamus* to compel the Circuit Court to enter judgment, he must either submit to the action of the court in reopening a protracted, expensive, and vexatious litigation, or else stand on his exception and abandon all further proceedings, and take the risk of the decision of an appellate court upon the question raised by his exceptions, at his

peril.    This, it seems to us, would be a hard rule of practice, the extension of which is not to be encouraged.    The re-opening of the litigation was wholly unnecessary, and un-warranted by the mandate of the Supreme Court.    Gibson stands in the position of having done all that he could do to prevent it, and, failing in this, of having gone before the referee, rather than put his rights to the hazard of not doing so.    We see nothing in his conduct which disables him from insisting upon the error of the Circuit Court in reopen-ing the case.

We reverse the judgment of the Circuit Court in this case, and remand the cause, with directions to the court to enter judgment in conformity with its judgment of June 23, 1873, except so far as modified by the decision of the Supreme Court; which will be a judgment that the executor pay to the devisees and distributees, when, and as ordered by the Probate Court, the sum of $401.17, with interest at the rate of six per cent per annum from the twenty-third day of June, 1873.    In conformity with the said judgment of the Circuit Court, the defendant Gibson will pay all the costs of this proceeding, both in the Probate Court and in the Circuit Court down to and including the entry of that judgment.    Under section 1001 of the Revised Statutes, he is entitled to recover the costs of his appeal to the Su-preme Court.    The subsequent proceedings in the Circuit Court, having been erroneously taken, against his objec-tion, and the judgment of the Circuit Court being re-versed by this court upon his appeal, he is entitled to recover his costs in the proceeding upon, and subsequent to, the coming down of the mandate from the Supreme Court, except the costs by him expended in the petition to this court for a *mandamus*, which is to be treated as an independent proceeding.    It is so ordered.    Judge LEWIS concurs; Judge BAKEWELL did not sit.